UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re                                                                    Case No. 806-70942-478
                                                                         Chapter 11
DEMMERT BUILDING COMPANY, INC.,


                         Debtor.
------------------------------------------------------X
DEMMERT BUILDING COMPANY, INC.,                    Adv. Pro. No. 807-8100-478


                         Plaintiff,


- against -


AMP, INC., ANDREW J. DeJOSEPH,
PAUL SENZER and MITCHELL BARNETT,


                         Defendants.
------------------------------------------------------X




<u>**Memorandum Decision**</u>



*Appearances:*


**Michael McAuliffe, Esq.**                 **Mitchell Barnett, Esq.**
Counsel for Plaintiff                       Counsel for Defendants
48 South Service Road                       224 Seventh Street
Suite 102                                   Garden City, NY 11530
Melville,  NY 11747

Before the Court are a motion by AMP, Inc., Andrew DeJoseph, Paul Senzer and Mitchell Barnett (collectively, the "Defendants") for summary judgment seeking dismissal of this adversary proceeding and a cross-motion by Demmert Building Co., Inc. (the "Debtor" or "Plaintiff") seeking entry of summary judgment on the Plaintiff's claims for relief.  For the reasons set forth herein, the Court finds that a binding contract exists between the parties with respect to the construction of the premises as set forth below.   An evidentiary hearing will be necessary to determine the extent to which the Defendants are obligated to pay the Plaintiff for the work performed under the binding contract.  The following constitutes the Court's findings of fact and conclusions of law as mandated by Fed. R. Bankr. P. 7052.

## PROCEDURAL HISTORY

The Debtor is a New York corporation in the business of owning and operating a single parcel of commercial real property located at 224 Seventh Avenue, Garden City, New York. Within this real property is a suite of offices which was leased by AMP, Inc. ("AMP") (the "Premises").  On May 1, 2006, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.  In Schedule B which pertains to the Debtor's personal property, the Debtor lists under "Accounts Receivable" an obligation by AMP to pay past due rent and construction costs for the Premises.  On February 15, 2007, the Debtor filed a disclosure statement ("Disclosure Statement") and a proposed plan of reorganization ("Plan").  On pages five and six of the Disclosure Statement, the Debtor set forth its allegations which are the subject of this adversary proceeding.  The Disclosure Statement was served on the Defendants and all other creditors and parties in interest by regular mail.  By order dated March 19, 2007 the Plan was

2

confirmed. On April 12, 2007, the Debtor commenced this adversary proceeding against the Defendants seeking payment for part of the cost to rebuild the Premises which the Defendants occupy. On November 8, 2007, a final decree in the Debtor's case was entered. The only matter pending in the Debtor's case is this adversary proceeding.

## FACTS

The following facts are not in dispute. AMP is a New York corporation whose shares are owned by three attorneys - Andrew DeJoseph, Paul Senzer and Mitchell Barnett (collectively, the "Individual Defendants"). Prepetition, the Debtor retained the services of Garden City Properties, Inc. ("GCP") to act as the leasing agent for the Premises. In or around June 2003, the Defendants entered into negotiations with GCP regarding leasing the Premises. At the time that the Individual Defendants were shown the Premises, the Debtor was in the process of gutting the Premises and part of the common areas of the building for future use. After discussions, GCP, as leasing agent for the Debtor, sent a letter to Andrew DeJoseph dated June 13, 2003. This letter set forth the terms of an offer by the Debtor as landlord to Mr. DeJoseph on behalf of the Individual Defendants as tenants. That original offer was revised by letter offer dated June 23, 2003 from GCP to Mr. DeJoseph. (Defendants' Ex. C) ("Letter of Intent"). Pursuant to the Letter of Intent, the Debtor conveyed an offer to Mr. DeJoseph, Mr. Senzer and Mr. Barnett for the lease of the Premises. The Letter of Intent specifies that the lease was for 1,449 square feet, with a lease term of five years. Rent was fixed at $25.50 per square foot, and the Defendants were to take possession at or around August 15, 2003, provided that the construction work on the Premises was substantially completed. In addition to these lease terms, the Letter of Intent provides that the Debtor agreed to complete the gutted common areas pursuant to general

requirements set forth therein, and the Debtor agreed to construct an entire space for the

Individual Defendants (the "Build Out"). The design for the Build Out included decreasing the

office rooms from five to four at the request of the Individual Defendants and included

demolition of the current office space and the installation of electricity, ceiling, duct work,

painting, molding, and doors. The floor plan for the Premises was to be approved by the

Individual Defendants. The Letter of Intent states:

> [Debtor] shall contribute $20.00 per useable square foot based upon a
> construction area of 1,188 square feet. All improvement costs above the amount
> of the [Debtor]'s contribution shall be borne by the Tenant. Tenant can either pay
> for the costs, or [Debtor] will finance said improvements and amortize them into
> the rent at a rate of 2 points over the actual borrowing costs.

(Defendants' Ex. C).

> The Letter of Intent also contains the following terms:

> This offer shall expire in five (5) calendar days from the date hereof. Until a lease
> is fully executed, [the Debtor] reserves the right to withdraw this offer at any time
> for any reason whatsoever.

> Presuming the terms contained herein are acceptable, it is imperative that it be
> returned with copies of your financial statements as per the requirements in the
> "Security" paragraph. After a review and approval the [Debtor] shall prepare a
> lease. The occupancy date is predicated upon executing a lease no later than July
> 1st.

(Defendants' Ex. C).

Mr. DeJoseph signed the Letter of Intent on behalf of the Individual Defendants on July

3, 2003, and returned the signed Letter of Intent to GCP with a cover letter stating that "[w]e are

in agreement with the terms expressed in [GCP]'s letter however, we cannot meet the August 15

date to take possession. As you know our current lease expires January 31, 2004." (Plaintiff's

Ex. H). Mr. DeJoseph further indicated that the Individual Defendants would attempt to

4

terminate the current lease for office space prior to its expiration and would be receiving an

answer from their current landlord on this issue.  There is no evidence of any further

communications regarding the offer contained in the Letter of Intent.  Based on the subsequent

conduct of the parties as set forth below, the Court assumes that the Debtor waived the late

acceptance of the offer by the Individual Defendants, and waived any requirement that a lease

for the Premises be executed by July 1, 2003.

On November 25, 2003, the Plaintiff and AMP entered into a lease for the Premises (the

"Lease").  The Lease was signed by each of the Individual Defendants on behalf of AMP

(Defendants' Ex. D).  Each of the Individual Defendants guaranteed the obligations of AMP

under the Lease.   The Lease is over six pages long and contains a 16 - page rider setting forth

the annual rent and the expenses to be borne by AMP, including taxes, heating, electricity and

insurance.  The Lease contains no reference to the Build Out or the Letter of Intent, and does not

state which party is responsible for paying for the Build Out.  Pursuant to paragraph 62 of the

Lease, all "costs and expenses which [AMP] assumes or agrees to be paid pursuant to this lease

shall be treated as additional rent, and, in the event of non-payment, [the Debtor] shall have the

rights and remedies herein provided for in case of nonpayment of fixed annual rent or additional

rent or of a breach of a covenant by [AMP]."  (Defendants' Ex. D).  Paragraph 62 of the Lease

further provides that in the event of a default by AMP under the Lease, the Debtor shall be

entitled to recover any expenses or counsel fees incurred in connection with the Debtor's

performance of AMP's obligations.  Furthermore, AMP shall be liable for any attorneys fees

incurred by the Debtor in connection with the enforcement of any provision of the Lease.

The Lease also contains a merger clause, as follows:

> No oral or prior written matter shall have any force or effect.  Tenant agrees that
> it is not relying on any representations or agreements other than those contained
> in this lease.  This agreement shall not be modified or canceled except by writing
> subscribed by the parties.

(Defendants' Ex. D).

After the Lease was fully executed, work on the Build Out commenced in January 2004 and was substantially completed sometime in February, 2004, with the exception of the work to be performed to give handicapped persons access to the Premises.  (Defendants' Ex. F).  The cost of the Build Out exceeded the $23,760.00 which the Debtor agreed to be responsible for pursuant to the Letter of Intent.  The parties dispute the actual amount that the cost of the Build Out exceeded $23,760.00.  According to the Debtor's calculations, the Defendants are responsible for $36,467.00.  The Defendants submit that assuming that the Letter of Intent was an enforceable contract, little if anything would be owed by the Defendants.

According to the affidavit of Robert Von Elm, the president of Elmhart Construction Co. which performed part of the Build Out, he met with the Individual Defendants and corresponded with them on many occasions, and many changes were made to the original plans at the request of the Individual Defendants.  (Plaintiff's Ex. J).  There is also evidence that in December, 2003, an  architectural firm retained by the Debtor provided office plans for the Build Out which reflected changes requested by Mr. DeJoseph.   (Plaintiff's Ex. K).  The Defendants personally corresponded with the architectural firm in December, 2003 regarding specific changes to the Build Out, including "final ideas for [the architect's] professional revision."  (Plaintiff's Ex. K). In addition, there are letters dated February 4, 2004 from the architectural firm to Paul Senzer, one of the Individual Defendants, acknowledging changes requested by Mr. Senzer regarding the

paint and the type of carpeting to be used in his office.  (Plaintiff's Ex. K).   Mr. DeJoseph also

sent a letter to Mr. Von Elm dated May 6, 2004 wherein he acknowledges that "[W]e are

responsible to pay for amounts over the budget," but states that the obligation runs from the

Defendants to the Debtor, not directly to the construction company. (Plaintiff's Ex. M).   Based

on this evidence, it is clear that the Defendants did obtain the benefits conferred upon them

pursuant to the Letter of Intent.

In 2005, Elmhart Construction Co. ("Elmhart") commenced an action against the Debtor

and the Defendants seeking judgment in its favor for services performed in connection with the

Build Out.  By judgment dated April 13, 2006, the District Court of Nassau County found in

favor of Elmhart and asserted liability against the Debtor only.  (Ex. D to Defendants' pretrial

conference statement filed April 24, 2007).  The Nassau County Court did not render a written

decision with findings of fact and conclusions of law.  Therefore, based on the record before the

Court, it is not possible to determine the rationale for the court's ruling from the judgment dated

April 13, 2006.  It appears, however, that the court determined that only the Debtor was

obligated to pay Elmhart for the work it performed on the Build Out.  As a result of the Debtor's

liability to Elmhart, the Debtor is seeking a determination of its rights as to its arrangement

between the Debtor and the Defendants for the costs of the Build Out.

## DISCUSSION

A. The Standards Governing Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure states that a motion for summary judgment shall

be granted:

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on
> file, together with the affidavits, if any, show that there is no genuine issue as to

7

any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56. Accordingly, in ruling upon a summary judgment motion, the Court must determine whether a genuine issue of material fact exists. The Court is not to resolve any disputed issues of fact if they exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The movant carries the initial burden of showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp*., 477 U.S. at 325, 106 S.Ct. 2548; *Kurtzman v. Nat'l Union Fire Ins. Co.*, 147 B.R. 335, 338 (Bankr.S.D.N.Y.1992); *CPY Co. v. Ameriscribe Corp. (In re Chas. P. Young Co.),* 145 B.R. 131, 135 (Bankr.S.D.N.Y.1992). The summary judgment motion should be granted only if (1) there is no genuine issue as to any material fact, and (2) the movant is entitled to judgment as a matter of law. Otherwise, it must be denied. *Anderson,* 477 U.S. at 247-52, 106 S.Ct. 2505; *Hamilton v. Smith*, 773 F.2d 461, 466 (2d Cir.1985).

B.  Procedural Requirements

Before the Court reviews the merits of each motion, the Plaintiff has raised certain procedural issues as impediments to considering the Defendants' motion. Pursuant to Local Bankruptcy Rule 7056-1, the Defendants were required to submit a separate statement of undisputed material facts. Failure to do so may constitute grounds for denial of the motion. *Sanders-Langsam Tobacco Co., Inc. v. Chemical Bank (In re Sanders-Langsam Tobacco Co.,*

8

*Inc.),* 224 B.R. 1 (Bankr. E.D.N.Y. 1998).    However, pursuant to Local Rule 1001-1©, the Court

may modify or suspend any requirements set forth in these rules in the interest of justice or for

cause.    The Court finds that in this instance, the Defendants have adequately set forth what they

believe to be the undisputed material facts which warrant consideration of their motion for

summary judgment.    Therefore, in this instance, the Court waives this procedural error.    The

Plaintiff also states that the Affirmation and Memorandum of Law are not in the form of an

affidavit, and that therefore it cannot be considered by the Court.    However, the Defendants have

submitted exhibits consisting of, *inter alia,* the Letter of Intent, the Lease and deposition

transcripts which are sufficient for this Court to consider the Defendants' motion.    Finally, the

Plaintiff points to the fact that the Defendants' Reply was filed five days after it was due as

further evidence that the Defendants have failed to comply with the rules and procedures of this

Court.    The Court acknowledges that the Reply was filed after the deadline agreed to by the

parties, but finds that there is no prejudice to the Plaintiff as the Reply does not add any new

legal arguments for this Court to consider.

      The Defendants argue that the Debtor failed to schedule its claim against the Defendants

in the Petition, which affected the Defendants' rights to participate in these bankruptcy

proceedings.    The Defendants also argue that the Debtor failed to include its claim against the

Defendants in the plan and disclosure statement which precluded the Defendants from exercising

their right to object to the plan.    The Defendants have not articulated how these facts, if true,

affect this adversary proceeding.    However, the Defendants are mistaken.    The Debtor did

include its claim against the Defendants in the schedules and provided a detailed description of

its claim against the Defendants in the disclosure statement.    The Debtor also served the

Defendants with a copy of the Disclosure Statement.  Furthermore, the Debtor does not seek to affect the Defendant's rights in this adversary proceeding by way of the Plan or the Disclosure Statement.  Therefore, the Court rejects the Defendants' argument that their due process rights were adversely affected by the Debtor in the bankruptcy proceedings, and finds that any rights the Defendants may have in this adversary proceeding are preserved and are unaffected by the Debtor's plan of reorganization.

C.  The Legal Effect of the Letter of Intent

The Individual Defendants assert that the Letter of Intent does not constitute a binding contract, and does not obligate the Individual Defendants to pay for any portion of the Build Out.  The question of whether a binding contract exists is one of law that is appropriately decided by summary judgment.  *Gorodensky v. Mitsubishi Pulp Sales (MC), Inc.,* 92 F. Supp.2d 249, 254 (S.D.N.Y. 2000)*, aff'd* 242 F.3d 365 (2nd Cir. 2000).  According to the Individual Defendants, the Letter of Intent is merely an agreement to agree, with no ability to bind the parties.  Under New York law, which applies to the agreements which are the subject of this adversary proceeding, a preliminary agreement is not ordinarily enforceable unless it meets certain requirements.  *Sabetfard v.  Smith,* 306 A.D.2d 265, 266, 760 N.Y.S.2d 525 (2nd Dep't 2003). For the purposes of this motion and cross-motion, the Court assumes that the Letter of Intent is a preliminary agreement.

The Court of Appeals for the Second Circuit has adopted the test set forth in *Teachers Ins. & Annuity Ass'n v. Tribune Co.,* 670 F. Supp. 491 (S.D.N.Y. 1987) to determine whether a preliminary agreement is enforceable.  *See Arcadian Phosphates, Inc. v. Arcadian Corp.,* 884 F.2d 69, 71-72 (2nd Cir. 1989) ("*Arcadian*"). The factors to consider are 1) whether the parties

10

expressly reserved the right to be bound absent a final contract; 2) whether there has been partial performance under the contract; 3) whether all of the terms of the contract have been agreed upon; and 4) whether the agreement is the type of contract that is usually committed to a more formal writing. *Missigman v. USI Northeast, Inc.,* 131 F. Supp.2d 495, 508 (S.D.N.Y. 2001).

The first factor, which is the most important factor, is the language of the agreement itself. *Arcadian,* 884 F.2d at 72. The Plaintiff, which had its agent draft the Letter of Intent, was not bound by its own offer until a lease was entered into. In this case, the Plaintiff and AMP did ultimately enter into the Lease, which served to bind the Plaintiff to the terms of the Letter of Intent with respect to the Build Out. The actual terms of the Lease supersede any of the terms of the Letter of Intent with regard to the lease terms, such as the rent obligations, and obligations to pay other charges in connection with heat, electricity and taxes. The Lease is completely silent as to the terms of the Build Out. There is no mention of the obligations of the parties to pay for the cost of the Build Out. In addition, the Letter of Intent does not state that the Lease shall contain the terms of the Build Out. It merely states that the offer contained in the Letter of Intent is revocable until a lease is entered into, as a condition precedent. The Court reads this provision to mean that the Plaintiff would not be obligated to commence construction of the Build Out pursuant to the terms requested by the Individual Defendants until a formal lease was entered into. Likewise, the Individual Defendants would not be obligated to make any payments for the Build Out until a formal lease was entered into. Therefore, the Court finds that the first factor favors a finding that a binding agreement was reached as to the Build Out.

The next factor, whether there are open terms remaining in the agreement, favors a finding that the Letter of Intent is binding. The Letter of Intent provides a specific method for

allocating the cost of the Build Out and gives the general parameters of the work to be performed. The Letter of Intent provides that the Individual Defendants are to approve a floor plan in the future which meets their specifications. The agreement is clear that the Premises are to be comprised of four office spaces, a conference room a reception area and two secretarial stations. The Letter of Intent does not contain more specific terms regarding the exact components of the Build Out because the Letter of Intent gives the Individual Defendants the right to have the Build Out constructed to their specifications. In exchange for that right, the Individual Defendants are charged with the obligation of paying for the Build Out to the extent the cost exceeds the fixed amount set forth in the Letter of Intent. In sum, the terms of the Build Out are sufficient to find that a binding agreement was reached.

The third factor, whether there has been partial performance, weighs in favor of finding the existence of a binding agreement because there is evidence that the Debtor permitted the Individual Defendants to modify the plans for the Build Out. The record also reflects that the Individual Defendants did ask for and obtain changes to the plans pursuant to their specific requests regarding choice of carpet, paint and other matters concerning the Build Out.

The remaining factors, the context of the negotiations and the necessity for a formal agreement, also weigh in favor of finding that the Letter of Intent constitutes a binding agreement as well. In weighing these factors, the courts consider the size of the transaction, the nature of the assets in question and the length of the obligations imposed. *Adjustrite,* 145 F.3d at 551. The Build Out is not a major construction project. In addition, the amount which the Defendants are alleged to owe under the Letter of Intent is less than $6,500 per year if it were amortized over the five- year term of the Lease. It does not appear that the complexity of the

12

project warranted entry into a formal contract regarding the Build Out especially since the specifications required by the Defendants might have changed as the project continued.   There could be no more formal description of the Build Out until the Defendants had a chance to examine the Premises, discuss their needs with the construction people and then submit their requests to the Debtors.

Given that all of these factors favor a finding that the Letter of Intent created a binding contract, the Court finds as a matter of law  that the Letter of Intent obligates the Defendants to pay for the Build Out to the extent that the charges for the Build Out exceeded $23,760.00.

D.  The Lease and the  Merger Clause

The Defendants argue that because the Lease is a fully integrated document with a merger clause, the Letter of Intent cannot be used to read additional terms into the Lease regarding the Build Out. The Defendants are correct that the Lease contains a merger clause.  It is also correct that under New York law, the terms of a fully integrated agreement containing a merger clause may not be altered by other oral or written agreements, and the Court may not look to extrinsic evidence to modify or alter the terms.  *2001 Commerce Street Corp. v. Star Enterprise,* 14 A.D. 3d 504, 505, 788 N.Y.S.2d 149 (2nd Dep't 2005).  Neither party disputes that the Lease contains detailed terms, including payment of rent.  Neither party disputes that the Lease contains no reference to the Build Out and no discussion of which party is to bear the cost of the Build Out.  Clearly, the Lease is a complete and integrated document, and the Letter of Intent may not be used to vary the terms set forth in the Lease.  Therefore, the terms of rent payment are fixed as set forth under the Lease, as are the Lease default provisions.  A default by the Defendants under the Letter of Intent does not constitute a default under the Lease.

However, the fact that the Lease contains a merger clause does not preclude the Court from treating the Letter of Intent as a separate, binding contract as to the terms of the Build Out. So long as the Letter of Intent is not being used to vary or modify the terms of the Lease, the Court may determine the rights of the parties under the Letter of Intent, which stands alone as a separate agreement between the parties.  The purpose of a merger clause in the Lease is to clarify that the Defendants and the Plaintiff can look to no other agreement with respect to their rights and obligations under the Lease.  Courts have not applied the parole evidence rule to bar the consideration of other agreements, whether oral or otherwise, which do not modify the terms of the written contract.  *See Primex Intern. Corp. v. Wal-Mart Stores, Inc.,* 89 N.Y.2d 594, 600, 679 N.E.2d 624, 657 N.Y.S.2d 385 (1997 N.Y. Slip Op.) (A prior agreement containing an arbitration clause was binding on the parties despite the fact that the subsequent agreement was silent on arbitration and contained a merger clause); *Gem Corrugated Box Corp. v National Kraft Container Corp.,* 427 F.2d 499, 503 (2nd Cir. 1970) (Court upheld the existence of an oral agreement for sale of stock where the parties had entered into a written agreement for the supplier to furnish a jobber with raw supplies which contained no mention of the oral agreement).  In our case, the Lease makes no mention of the Build Out, and the Court does not view the terms of the Build Out set forth in the Letter of Intent as a modification of the Lease terms.  Rather, the Letter of Intent is a separate agreement which pertains to the preparation of the Premises to be used by the Defendants in anticipation of the lease to follow.

E.  Existence of Implied Contract

Even if the Court were to find that the Letter of Intent did not constitute a binding agreement, there is sufficient evidence in this record to find that there is an implied contract

14

between the parties regarding the Build Out. Under New York law, even if there is no written binding contract between the parties, "'a contract may be implied where inferences may be drawn from the facts and circumstances of the case and the intention of the parties as indicated by their conduct.'" *Missigman v. USI Northeast, Inc.,* 131 F. Supp. 2d at 512 (other citations omitted). While a contract cannot be implied where the facts are inconsistent with its evidence, or there is an express contract covering the subject matter, so long as the party being charged with having entered a contract expresses his assent, or conducts himself in a manner that his assent may fairly be inferred, an implied contract may be imposed. *Id.* at 513.

In this case, based on the evidence before the Court on this motion, the Defendants clearly conducted themselves in a manner which leads the Court to believe they assented to the terms of the Build Out and had a clear intent to be bound by it. The Individual Defendants proceeded to work with the architect and the Debtor to ensure that the Premises were configured to their specifications and there is evidence to support a finding that the Individual Defendants understood their monetary obligations for the Build Out. (See Plaintiff's Ex. M). There is no material issue of genuine fact which precludes the Court from finding that an implied contract regarding the Build Out exists between the Plaintiff and the Individual Defendants.

F.  Reformation of the Lease

The Debtor argues that due to a mutual mistake by the parties or due to the mistake of the Plaintiff and inequitable conduct on the part of the Defendants, the terms of the Build Out were not incorporated into the Lease and that reformation of the Lease to include these terms is appropriate. If the Court were to find that it should reform the Lease as requested by the Plaintiff, then the Defendants' failure to pay for a portion of the Build Out would result in a

default under the terms of the Lease.  Furthermore, the Defendants would be liable to the

Plaintiff for attorneys fees incurred by the Plaintiff in this action.  However, reformation of the

Lease is not warranted under applicable New York law.

The Debtor correctly cites to case law which stands for the proposition that when parties

reach a preliminary agreement and a formal instrument executed later in fulfillment of the

agreement contains terms which are materially different due to mistake by one party and mistake

or inequitable conduct by the other party, a court of equity may reform the formal agreement to

make it conform to the preliminary agreement.  *Tokio Marine & Fire Ins. Co. v. National Union*

*Fire Ins. Co.,*18 F. Supp. 720, 722 (S.D.N.Y. 1937)*, aff'd* 91 F.2d 964 (2nd Cir. 1937) (citing

*Hearne v. Marine Ins. Co.*, 87 U.S. 488, 22 L.Ed 395, 20 Wall. 488 (1874)); *Elliott v. Sackett*,

108 U.S. 132, 2 S. Ct. 375, 27 L.Ed. 678 (1883) (other citations omitted)).   Courts recognize

that the standard of proof for reformation of a contract is high.  There is a heavy presumption

that a written contract which is  deliberately prepared and executed reflects the parties' true

intent.  *George Backer Management Corp. v. Acme Quilting Co.*, 46 N.Y.2d 211, 219, 413

N.Y.S.2d 135, 385 N.E.2d 1062 (N.Y.1978).  The party seeking reformation of a contract must

show in clear and convincing terms that a mistake or fraud exists and that the parties actually

agreed to the different terms which are not included in the contract.  *Id.*

In this case, the Plaintiff has been involved in commercial real estate for many years and

has negotiated a significant number of commercial leases.  It is unlikely that the Plaintiff would

have forgotten to include the terms of the Build Out in the Lease given its experience in

commercial real estate leases.  An examination of the evidence presented to support the

Plaintiff's argument only supports a finding that the parties agreed to the terms of a Build Out,

16

not that the parties meant to include the terms of the Build Out into the Lease.  Therefore, the

Court rejects the Plaintiff's argument regarding reformation of the Lease.

The remaining issue to be decided is the extent to which the Individual Defendants are

liable to the Plaintiff for the cost of the Build Out.  There are material issues of fact in dispute on

this issue, and the Court cannot determine this issue on summary judgment.  The Court has

scheduled an evidentiary hearing on March 27, 2008 at 10:00 a.m. to determine what amount, if

any, is due to the Debtor from the Individual Defendants.

## CONCLUSION

1.  The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and

1334(b).  This proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),

(B) and (O).

2. Summary judgment is appropriate to determine whether the Letter of Intent is a binding

agreement.

3. The Defendants' motion for summary judgment is denied and the Plaintiff's cross-motion for

summary judgment is partially granted.  Based on the terms of the Letter of Intent, the Plaintiff

and the Individual Defendants entered into a separate, binding agreement obligating the Plaintiff

to construct the Build Out for the Premises and obligating the Individual Defendants to pay for

the costs of the Build Out which exceeded $23,760.00.

4.  The merger clause contained in the Lease does not preclude this Court from finding that the

Letter of Intent constitutes a binding agreement between the parties because the Letter of Intent

is not being used to modify the Lease or add any terms to the Lease.

5. Even if the Letter of Intent is not deemed a binding agreement, the conduct of the parties

indicates that an implied contract exists between the parties which conforms to the terms of the Build Out set forth in the Letter of Intent.

6.  The evidence provided by the Plaintiff does not support a finding that reformation applies to permit the inclusion of the terms of the Build Out in the Lease.

7.  An evidentiary hearing shall be held on March 27, 2008 at 10:00 a.m. to determine the amount of money the Individual Defendants owe the Plaintiff for the Build Out.

The Court shall enter an order consistent with this memorandum decision.

Dated: Central Islip, New York
        February 25, 2008                    By: */s/ Dorothy Eisenberg* _____
                                                 UNITED STATES BANKRUPTCY JUDGE

18